UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA

In re:                                :         Case Number 1-06-02931
                                      :
DUKE HEATING OIL, INC                 :
                                      :
            Debtor                    :         JUDGE MARY D. FRANCE

# DISCLOSURE STATEMENT
# TO ACCOMPANY PLAN DATED JUNE 2007

Debtor furnishes this Disclosure Statement to creditors in the above-captioned matter pursuant to Federal Bankruptcy Code 11 U.S.C. §1125 to assist them in evaluating Debtor's proposed Chapter 11 Plan, a copy of which is attached hereto. Creditors may vote for or against the plan of reorganization. Creditors who wish to vote must complete their ballots and return them to the following address before the deadline noted in the order approving the Disclosure Statement and fixing said time. The Court will schedule a hearing on the Plan pursuant to 11 U.S.C.1129.

       Address for return of ballots:

       Doran Nowalis & Doran
       69 Public Square, Suite 700
       Wilkes Barre PA 18701

## I. BACKGROUND

1. **Name of Debtor:** DUKE HEATING OIL, INC

2. **Type of Debtor:** corporation

3. **Debtor's Business or Employment:** sale of home heating oil, gas and kerosene

4. **Date of Chapter 11 Petition:** December 18, 2006

5. **Events that Caused the Filing:** collection action by creditor

6. **Anticipated future of the Company & Source of this information and opinion:** continued operations

7. **Are All Monthly Operating Statements Current and on File With The Clerk of Court?** yes

## II. CREDITORS

### A. Administrative Claims:
these claims would include any past due quarterly fees, professional fees, claims incurred in the ordinary course of business, and a claim of $2,248.89 which has been filed by the IRS.

### B. Secured Claims:

| Creditor | Total Amount Owed | Arrearage | Type of Collateral/ Priority of Lien | Will Liens be retained under the plan? |
|---|---|---|---|---|
| OMEGA BANK | 320,796.66 | undetermined | Lien on Real property after real estate taxes; first lien on equipment, a/r, etc (under 3 separate loan obligations) | yes |
| TAX COLLECTOR/ NORTHUMBERLAND COUNTY TAX CLAIM | 3,583.01 | 3,583.01 | First lien on real property (interest is accruing) Also, 2007 tax will be due at time of confirmation. | yes |
| TOTAL: | $324,379.67 | | | |

Note: Leighow Oil Co has a judgment recorded which would create a lien on real property, but because the prior liens of the real estate taxes and Omega bank exceed the value of the property, Leighow is treated as an unsecured creditor under this plan. Leighow will release the judgment upon completion of payments to the unsecured class.

### C. Priority Claims

| Creditor | Total Amount Owed |
|---|---|
| IRS | 14,999.91 |
| Pa Dept of Revenue | 1,708.98 |
| | 16,708.89 |

### D. Unsecured Claims

| | |
|---|---|
| 1. Amount Debtor Scheduled (Disputed and Undisputed) | $535,145.88 |
| 2. Amount of Unscheduled Unsecured Claims [1] | $9,502.69 |
| 3. Total Claims Scheduled or Filed | $544,648.57 |
| 4. Amount Debtor Disputes/Claims disallowed by court | $4,268.99 |
| 5. Estimated Allowable Unsecured Claims | $540,379.58 |

[1] Includes: (a) unsecured claims filed by unscheduled creditors; (b) that portion of any unsecured claim filed by a schedules creditors that exceeds the amount debtor scheduled; and (c) any unsecured portion of any secured debt nor previously scheduled.

### E. Other Classes of Interest Holders

There are no interest holders except the three shareholders: Thomas Duke (66 2/3%), Dolores Duke (16 2/3%), and Lorelei Duke (16 2/3%).

## III. ASSETS

### Assets

| Assets | Value | Basis for Value | Lienholder |
|---|---|---|---|
| Real property (offices, gas station, storage facility) | 200,000.00 | appraisal | Omega Bank & real estate tax |
| petty cash | 20.00 | | |
| checking acct at Omega Bank | 5,791.82 | | Omega Bank |
| savings acct at Omega Bank | 50.00 | | Omega Bank |
| credit card account at M&T Bank | 576.39 | | Omega Bank |
| workers comp insurance | 0 | | |
| liability & auto insurance | 0 | | |
| health insurance | 0 | | |
| flood insurance | 0 | | |
| accounts receivable | 109,000.00 | | Omega Bank |
| condemnation action | unknown | | Omega Bank |
| mercantile and tax licenses | 0 | | |
| customer list | unknown | | |
| 1986 Mack truck | 10,000.00 | appraisal | Omega Bank |
| 1990 International truck | 15,000.00 | appraisal | Omega Bank |
| 1995 International truck | 23,000.00 | appraisal | Omega Bank |
| Ford Windstar van | 7,500.00 | | Omega Bank |
| Chevy Camero | 3,000.00 | | Omega Bank |
| Versyss computer system | 5,000.00 | | Omega Bank |
| HP officejet printer | 200.00 | | Omega Bank |
| misc office furn/equipment | 1,000.00 | | Omega Bank |
| 7 above-ground storage tanks, piping, loading rack, gas dispensers, gasboy system and canopy | 27,000.00 | appraisal | Omega Bank |
| forklift | 400.00 | | Omega Bank |
| lawnmower | 200.00 | | Omega Bank |
| 3 storage trailers | 6,000.00 | | Omega Bank |
| kabota tractor | 5,000.00 | | Omega Bank |
| misc tools | 250.00 | | Omega Bank |
| 10 underground tanks | no value | | |
| inventory of home heating oil, gasoline, truck fuel, diesel, kerosene | 16,420.38 | | Omega Bank |
| **TOTAL** | **$435,408.21** | | |

1. Are any assets which appear on Schedule A or B of the bankruptcy petition not listed above?    *no*


2. Are any assets listed above claim as exempt:  *No. Corporations are not allowed to claim exemptions.*

# IV. SUMMARY OF PLAN

**1. Effective Date of Plan**: *Fifteen (15) days after a final, non-appealable order confirming the Plan.*

**2. Treatment of Administrative Claims**

**a. US Trustee:** Any quarterly fees past due at the time of confirmation will be paid in full within 10 days of the Effective Date. Future quarterly fees, owed through the entry of the final decree, will be paid from cash flow as they come due.

b. **Professional fees**: professional fees incurred through the date of confirmation will be paid from operations after court approval of such fees.

c. **IRS:** The IRS filed an administrative claim of $2,248.89 for taxes due for the fourth quarter of 2006. These will be paid in full within 10 days of the Effective Date.

d. **Other Administrative Expenses**: Should any other allowable administrative obligations arise, they will be paid in full within 10 days of the Effective Date.

Source of payment of administrative claims: All Administrative Expenses due as of the Effective Date will be paid in full within 10 days of the Effective Date from the contribution being made by the Equity holders. Should the Equityholder contribution be insufficient to fund such administrative expenses, the balance will be made up from cash flow.

**3. Treatment of Secured Claims**:

## SECURED CLAIMS

**(a) CLASS 2**-- CHARLENE ZIEGLER, TAX COLLECTOR/NORTHUMBERLAND COUNTY TAX CLAIM BUREAU: All past due real estate taxes, including interest accumulated to date of payment will be paid in full in a lump sum in the second month after the Effective Date. The taxes will remain as liens on the real property until paid in full.

**(b) CLASS 3**—OMEGA BANK:
 1. The Note of $224,383.36 will be amortized over 15 years with a monthly payment of approximately $2,266.51, beginning the month after the Effective Date. Interest may adjust by the terms of the note.
 2. The Note of $64,950.99 will be amortized over 7 years with a monthly payment of approximately $1,053.26, beginning the month after the Effective Date. Interest may adjust by the terms of the note.
 3. The note of $31,462.31 will continue to be paid by its terms at $952.35 per month.
 4. Should the Debtor succeed in recovering from the Condemnation action, the net proceeds (net of attorney fees and costs of litigation) will be paid to Omega Bank and will be applied to the note of $31,462.31. If it is not enough to pay the note in full, the Debtor will continue paying the $952.35 per month until the balance of the note is paid. If the recovery fully pays the note, then any extra proceeds will apply toward the note of $64,950.99 as may be agreed between the Debtor and Omega Bank.

## 4. Treatment of Priority Claims

### PRIORITY CLAIMS

| Name of Creditor | Class | Amt Owed | Total payment (including interest) |
|---|---|---|---|
| IRS | 4 | 14,999.91 | 15,510.86 |
| Pa Dept of Revenue | 4 | 1,708.98 | 1,767.30 |
| | | 16,708.89 | 17,278.16 |

Summary of proposed treatment: priority claims will be paid pro-rata in monthly installments of $2,500 with interest at 8% until paid in full. Payments begin in 4th month of plan and will be paid for 6 months, and the balance in 7th month. Should there be a surplus from the equity contribution after administrative claims are paid, that surplus will be paid, pro-rata, to priority claims within 15 days of the Effective Date, and the interest recalculated and duration of the installment payments reduced accordingly.

## 5. Treatment of General Unsecured Claims

### GENERAL UNSECURED CLAIMS

| Name of Creditor | Class | Amt Owed | Total dividend (31%) |
|---|---|---|---|
| Leighow Oil Co, Inc | 5 | 420,000.00 | 130,620.00 |
| Thomas & Dolores Duke | 5 | 50,000.00 | 0* |
| Thomas & Dolores Duke | 5 | 47,189.01 | 0* |
| USTIF Fund | 5 | 1,980.00 | 615.78 |
| Wachovia Bank | 5 | 1,870.08 | 581.59 |
| Wachovia Bank | 5 | 1,896.94 | 589.95 |
| Wachovia Bank | 5 | 10,463.73 | 3,254.22 |
| Wachovia Bank | 5 | 1,746.12 | 543.04 |
| IRS | 5 | 1,251.20 | 389.12 |
| Pa Dept of Revenue | 5 | 662.28 | 205.97 |
| Pitney Bowes | 5 | 5,233.70 | 1,627.68 |
| TOTAL: | | $540,379.58 | $138,427.35 |

*no dividend will be paid to insider creditors*

| | |
|---|---|
| Will periodic payments be made to unsecured creditors? | *yes* |
| Amount of each payment (aggregate to all claimants): | $ 2,500.00 |
| Estimated date of first payment: | 11th month after confirmation or sooner |
| Time period between payments: | monthly |
| Estimated date of last payment: | 55 months after payments begin |

Possible additional payment to unsecured creditors: The Debtor is currently litigating a condemnation for a right of way. Should the Debtor recover net proceeds in excess of $88,000 (which is not anticipated) then the Debtor will extend the duration of the plan at the payments of $2,500 per month until unsecured creditors have received an amount equal to such excess.

Leighow Judgment: Leighow will release its judgment lien upon completion of payments to the unsecured creditors.

## 6. Treatment of Equity Holders:
The shareholders, Thomas J. Duke, Dolores Duke, and Lorelei Duke will retain their stock. The equity class will contribute a total of $9,500 within 10

5

days of the Effective Date in exchange for their equity positions. This contribution will be paid to the administrative class as descried in IV(2) above and, if sufficient funds exist, to the priority class as described in IV(4) above.

State source of funds for plan payments, including funds necessary for capital replacement, repairs or improvements: *Plan payments will be funded from the Equity Contribution and from cash flow. Also, should any funds be recovered from the pending condemnation action, those net funds would be paid to the secured creditor which is secured in real estate. Repairs will be paid from cash flow.*

## V. COMPARISON OF PLAN WITH CHAPTER 7 LIQUIDATION

If debtor's proposed plan is not confirmed, the potential alternatives would include proposal of a different plan, dismissal of the case or conversion of the case to Chapter 7. If this case is converted to Chapter 7, a Trustee will be appointed to liquidate the debtor's non-exempt assets. In this event, all secured claims and priority claims, including all expenses of administration, must be paid in full before any distribution is made to unsecured claimants.

| | |
|---|---:|
| Total value of Chapter 7 estate (See Section III) | $435,408.21* |
| 1. Less secured claims (See IV-2) | $324,379.67 |
| 2. Less administrative expenses (See IV-3) | $2,248.89 |
| and include approximate Chapter 7 expenses (estimated at 10% of value of estate ) | 43,000.00 |
| 3. Less other priority Claims (See IV-4) | $16,708.89 |
| Total amount Available for Distribution to Unsecured Creditors | $49,070.76 |
| Divided by total allowable unsecured claims of | $540,379.58 |
| Percentage of Dividend to Unsecured Creditors: | 9%* |

*plus any recovery from pending condemnation action*

Will the creditors fare better under the plan than they would in a Chapter 7 liquidation? *yes* Explain: *Under a liquidation, general unsecured creditors would receive approximately 9% of their claims, (assuming all fees expenses and liquidation expenses could be held at 10%.). Under the plan, unsecured creditors will receive approximately 31% of their claim. Insider claims are not being paid in the Plan. Equity contribution increases the amount being paid to creditors under the plan, but would not be paid in a Chapter 7.*

6

## VI. FEASIBILITY

The Following are attached to this Disclosure Statement:

　　A. Financial Statements for May 31, 2007 (compilation).

　　B. Historic (May 31, 2007) and forecasted (May 31, 2008) statements of income and cash flow (compilation).

Estimated Amount to be paid on Effective Date:

| | |
|---|---:|
| Administrative Class | $2,248.89 |
| 1st monthly contribution to Plan | 2,500.00 |
| UST Fees (2Q est. to be due at confirmation) | 3,750.00 |
| TOTAL | $8,498.89 |

What assumptions are made to justify the increase in cash available for the funding of the plan?  *Debtors projections include a modest increase in sales.*

Will funds be available in the full amount of administrative expenses on the effective date of the plan? *yes.*  From what source: *cash flow and the contribution of equity holders.* If not available, why not and when will payments be made?  *Existing sources should pay administrative expenses which are being paid at the Effective Date. Professional fees will be paid as those fees are approved from cash flow.*

Balance per bank statements as of end of May 2007:　$21,300.95.

## VII: TAX MATTERS

In general the debtor may have to reduce certain of its tax attributes arising from any forgiveness of indebtedness.  The Debtor has loss carryforwards which should be available to reduce its future taxes.   Creditors should consult with their tax advisors to properly treat the receipt of the installment payments under the plan and how the creditor may treat the portion of the debt which will not be repaid as a result of the confirmation of this plan.

7

## VIII.  MANAGEMENT SALARIES

### MANAGEMENT SALARIES

| POSITION/NAME OF PERSON HOLDING POSITION | SALARY AT TIME OF FILING | PROPOSED SALARY (POST CONFIRMATION) |
|---|---|---|
| Thomas J. Duke, President | no salary | no salary |
| Dolores Duke, Vice President | 48,784 | 48,784 |
| Lorelei Duke, manager | 37,383 | 37,383 |

## IX.  IDENTIFY THE EFFECT ON PLAN PAYMENTS AND SPECIFY EACH OF THE FOLLOWING:

1.  What, if any, Litigation is Pending?  *Portions of the Debtor's property are subject to a pending condemnation action for use as a right-of-way.  The Debtor declined the offer of compensation and is litigating that now.  Any net recovery will be paid to Omega Bank.*

2.  What, if any, Litigation is Proposed or Contemplated?  *no other litigation contemplated at this time.*

## X.  CERTIFICATION

The undersigned hereby certifies that the information herein is true and correct to the best of my knowledge and belief formed after reasonable inquiry.

*If Debtor is a corporation, attach a copy of corporate resolution authorizing the filing of this Disclosure Statement and Plan.*

DATED:  June 15, 2007                         */s/  Thomas Duke, President*
                                                                 THOMAS DUKE, PRESIDENT

Attorney for Debtor:

DATED:   June 15, 2007                         */s/ Lisa M Doran, Esq*
                                                                 LISA M. DORAN, ESQUIRE